PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE <u>Southern</u> DISTRICT OF TEXAS
### <u>Houston</u> DIVISION

<u>James A. Meeks III</u>
<u>#543366</u>
Plaintiff's Name and ID Number
<u>Estelle unit 264 fm 3478</u>
<u>Huntsville, Tx. 77320</u>
Place of Confinement

*United States Courts*
*Southern District of Texas*
*FILED*

*SEP 24 2018*

*David J. Bradley, Clerk of Court*

CASE NO._____
(Clerk will assign the number)

v.
<u>Lorie Davis, Exec. Dir. TDCJ-CID</u>
<u>Texas Department Criminal Justice</u>
Defendant's Name and Address
<u>Warden G. Vaugh - Estelle unit</u>
<u>Texas Department Criminal Justice</u>
Defendant's Name and Address
<u>State classification Department</u>
<u>Texas Department Criminal Justice</u>
Defendant's Name and Address
( DO NOT USE "ET AL.")

---

### INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1.  To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2.  Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3.  You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4.  When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

Rev. 05/15

**FILING FEE AND *IN FORMA PAUPERIS* (IFP)**

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at your prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis*.)

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.   PREVIOUS LAWSUITS:

    A.   Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? ✓YES___NO

    B.   If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

        1.   Approximate date of filing lawsuit: _MAY 24, 2018_

        2.   Parties to previous lawsuit:

            Plaintiff(s) _JAMES A. MEEKS III_

            Defendant(s) _WARDEN NASH, et al,_

        3.   Court: (If federal, name the district; if state, name the county.) _EASTERN DISTRICT_

        4.   Cause number: _4:18-CV-01723_

        5.   Name of judge to whom case was assigned: _MARCIA A. CRONE_

        6.   Disposition: (Was the case dismissed, appealed, still pending?) _STILL PENDING_

        7.   Approximate date of disposition: _PENDING_

Rev. 05/15

II.   PLACE OF PRESENT CONFINEMENT: ESTELLE UNIT 264 Fm 3478 Huntsville, Tx. 77320

III.  EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?   ✓ YES ___ NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.   PARTIES TO THIS SUIT:

A.  Name and address of plaintiff: James Arthur Meeks III #543366 ESTELLE UNIT 264 Fm 3478 Huntsville, Tx. 77320, et al,

B.  Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1: LORIE DAVIS, EXECUTIVE DIRECTOR OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, P.O. BOX 99 Huntsville, Tx. 77342-0099

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

DELIBERATE INDIFFERENCE

Defendant #2: WARDEN G. VAUGHN - ESTELLE UNIT 264 Fm 3478 Huntsville, Tx 77320 - TEXAS DEPARTMENT OF CRIMINAL JUSTICE

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

DELIBERATE INDIFFERENCE

Defendant #3: STATE CLASSIFICATION (UNKNOWN PERSONS), P.O. BOX 99 Huntsville, Tx. 77320 - TEXAS DEPARTMENT OF CRIMINAL JUSTICE

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

DELIBERATE INDIFFERENCE

Defendant #4: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Defendant #5: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Rev. 05/15

V.    STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

I WAS UNDER THE FEDERAL JUDGE KEITH P. ELLISONS INJUNCTIVE ORDER FOR TDCJ TO HOUSE ME IN 88° LIVING CONDITIONS. THE DEFENDANT'S VIOLATED THIS ORDER VIA DELIBERATE INDIFFERENCE, BY PLACING ME BACK IN UNCONST-ITUTIONALY EXTREME HEAT ENVIRONMENT ON THE ESTELLE UNIT, EXPOSING ME, VIA DELIBERATE INDIFFERENCE, VIA REFUSAL OF EVEN MINIMAL HEAT MITIGATION - NO "GOOD-FAITH" ACTIONS BY TDCJ STAFF - CRUEL & UNUSUAL PUNISHMENT - THE DEFENDANTS ARE RESPONSIBLE FOR THE UNNECESSARY DEATHS OF TWO INMATES FROM JULY-SEPTEMBER 2018 (NAMED HEREIN), AS WELL AS GUILTY OF PUTTING ME AND OTHERS AT RISK OF BODILY HARM VIA EXPOSURE TO EXTREME HEAT - LACK OF HEAT MITIGATION EFFORTS, - EQUAT-ING TO CRUEL & UNUSUAL PUNISHMENT, VIA, OBDURACY, WANTONNESS, MALICIOUS, AND SADISTIC BEHAVIORAL INTENT.

VI.   RELIEF:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

HOUSE ME IN 88° LIVING CONDITIONS, IN A PRISON (I.D.) UNIT SETTING (DICTATES), PROTECT ME FROM FURTHER HARM, COMPENSATE ME, AND OTHERS NAMED HEREIN, AND HOUSE ME PERMANENTLY HEREAFTER IN FEDERAL CUSTODY - MAY THIS BE TO LAST UNTIL MY SENTENCE IS OVER.

VII.  GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

JAMES ARTHUR MEEKS III - JAY MEEKS

B. List all TDCJ-CID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

TDC# 5433166 - DON'T KNOW FBI #

VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? _____ YES ✗ NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

  1. Court that imposed sanctions (if federal, give the district and division): ___N/A___

  2. Case number: ___N/A___

  3. Approximate date sanctions were imposed: ___N/A___

  4. Have the sanctions been lifted or otherwise satisfied? ___N/A___ _____ YES _____ NO

Rev. 05/15

4

C. Has any court ever warned or notified you that sanctions could be imposed?     _____ YES  ✗ NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

    1. Court that issued warning (if federal, give the district and division): _____ N/A _____

    2. Case number: _____ N/A _____

    3. Approximate date warning was issued: _____ N/A _____

Executed on: *September 17th, 2018*
            DATE

                                     JAMES ARTHUR MEEKS III

                                         (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.

2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this _____ 17th _____ day of _____ September _____, 20 _18_
           (Day)                  (month)          (year)

                                       JAMES ARTHUR MEEKS III

                                         (Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Rev. 05/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES ARTHUR MEEKS III                    )
    #543366, et AL,                       )
        (PLAINTIFFS)                       )
                                          )
V.                                        )
    LORIE DAVIS, EXECUTIVE DIRECTOR        )      Civil Action No. _____
OF TEXAS DEPARTMENT OF CRIMINAL            )
JUSTICE, WARDEN VAUGHN, ASST.              )
WARDEN ESTELLE UNIT, TEXAS DEPT.           )
OF CRIM. JUSTICE - CID, STATE              )
CLASSIFICATION, TEX. DEPT. CRIM.           )
JUSTICE,                                   )
        (DEFENDANTS)                       )
                                          )

## 42 U.S.C. §1983 CIVIL COMPLAINT, AND PARALLELED WITH A "BIVENS" TYPE 28 USC §1331(A), AND 18 U.S.C. §3626(b)(3)

**JURISDICTIONAL QUESTION:** IN COLE V. COLLIER 4:14-CV-1698 (DOC. 989 MARCH 06, 2018), IT STATED "... THE COURT WILL HAVE CONTINUING JURISDICTION OVER THIS CASE ..." AS THERE ARE "... ONGOING VIOLATIONS OF FEDERAL RIGHTS," 18 U.S.C. §3626(b)(3) DOC. 737). FURTHERMORE, PETITIONER STATES THAT HE HAS BEEN A PARTICIPANT IN THE HONORABLE JUDGE KEITH P. ELLISON'S IN-JUNCTIVE ORDER TO HOUSE PETITIONER IN 88° LIVING CONDITIONS WHICH HAS SINCE BEEN VIOLATED BY THE DEFENDANTS NAMED HEREIN. PETITIONER CLAIMS JURISDICTION VIA 42 USC §1983, 28 U.S.C §1331(a), AND 18 U.S.C. §3626(b)(3), See als Johson V. Duffy 588 f. 2d. 740, 745, (9TH CIR 1978).

### I.

I, JAMES ARTHUR MEEKS III, #543366, PETITIONER, Pro SE, COME BEFORE THIS HONORABLE COURT VIA THE ABOVE JURISDICTION, ALA SEE BIVENS V. SIX UNKNOWN...

FEDERAL NARCOTICS AGENTS 403 U.S. 388, 29 L.ED. 2d. 619, 91 S.Ct. 1999 (1971), CARLSON V. GREEN 446 U.S. 14, 64 L.Ed. 2d. 15, 100 S.Ct. 1468 (1980). FOR ALL OF THE FOLLOWING:

## II.

ON APPROXIMATELY AUGUST 15, 16, 17, - 2018, AND THEN CONTINUING ON AUGUST 23, 2018 TO PRESENT THE FOLLOWING DEFENDANTS ARE RESPONSIBLE FOR THE FOLLOWING: LORIE DAVIS, EXECUTIVE DIRECTOR OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, WARDEN Vaughn ESTELLE UNIT, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, AND THE STATE CLASSIFICATION PERSONEL (UNNAMED INDIVIDUAL(S)), OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE ARE RESPONSIBLE FOR VIOLATING MY EIGHTH AMENDMENT CONSTITUTIONAL RIGHTS BY SUBJECTING ME TO "EXTREME HEAT" CONDITIONS IN THE TDCJ-CID, INTER ALIA, VIA DELIBERATE INDIFFERENCE AND TDCJ-CID'S BLATANT DISREGARD TO MY FEDERALLY PROTECTED RIGHTS AND AN INVASION OF MY RIGHTS VIA AN UNHINGED INTERPRETATION BY THE ABOVE DEF - ENDANTS CONCERNING MY RIGHTS AS PURSUANT TO THE HONORABLE JUDGE KEITH P. ELLISON'S ABOVE INJUNCTIVE ORDER(S) FROM August and September of 2018, EXTENDING THROUGH THE Summer of 2018, See above. HEREAFTER, THE ABOVE UNDERLINED ARE REFERRED TO AS DEFENDANTS. SEE EXHIBIT 7.

## III.

### ALLEGATIONS:

ON August THE 15th - 17th 2018 TDCJ-CID STAFF TRANSFERRED ME FROM THE LEBLANC UNIT PRISON IN BEAUMONT, TX, (WHERE I HAD BEEN HOUSED BY THE TDCJ-CID DEFENDANTS SINCE August 2017, AS PER THE FEDERAL JUDGE KEITH P. ELLISON'S INJUNCTIVE ORDER FOR TDCJ TO PLACE ME IN 88° LIVING CONDITIONS); AND PLACED ME IN THE "EXTREME HEAT" CONDITIONS OF THE ESTELLE UNIT IN HUNTSVILLE, TEXAS EXPOSING ME TO EIGHTH AMENDMENT CON - STITUTIONAL VIOLATIONS OF CRUEL AND UNUSUAL PUNISHMENT VIA DELIBERATE INDIFFERENCE, ONCE AGAIN. THIS WAS DONE DESPITE

2.

THE FACT THAT THE DEFENDANTS WERE ALL FULLY AWARE OF THE ENTIRE ACTIONS SEE EXHIBIT 7.
CONCERNING Cole V. Collier 4:14-CV-1698, AS WELL AS THE INJUNCTIVE
ORDERS IN WHICH TDCJ-CID WAS DIRECTED TO PLACE ME IN 88° LIVING CONDIT- SEE EXHIBIT 9.(PP.39)
IONS DUE TO THE FACT THAT I AM BOTH: OBESE (WITH A BODY MASS INDEX OF SEE EXHIBIT 10.(PP.43-44)
31.0 AS PER UTMB MAR. 2018), AND MY ACUTE DISEASE OF THYROID CONDITION
DISORDER. BOTH MEDICAL CONDITIONS WERE CERTIFIED BY JUDGE KEITH
P. ELLISON AS "HEAT RELATED SUBCLASS" IN MORE THAN ONE INSTANCE AND
LATER AFFIRMED BY THE COURT OF APPEALS FIFTH CIRCUIT. THESE MED-
ICAL CONDITIONS ARE WHAT GOT ME INTO THE INJUNCTION IN AUG-
UST OF 2017, AND THIS SAME INJUNCTION WAS EXTENDED BY THIS
COURT IN JANUARY OF 2018 TO LAST THROUGH THE SUMMER OF
2018 (TO END ON OCT. 15, 2018). THE FACT THAT THE DEFENDANTS WERE
AWARE OF THE ABOVE YET STILL PLACED ME IN SUCH CONDITIONS ON August
15, 16, 17, OF 2018, IS EQUIVALENT TO DELIBERATE INDIFFERENCE FOR FAILURE
TO PROTECT MY SAFETY, see FARMER V. BRENNAN 114 S. Ct. 1970 (A TRANSEXUAL
FEDERAL PRISON PREVIOUSLY HOUSED IN SEGREGATION BY FEDERAL PRISON OFFICIALS whom later
DISCARED PRISONER'S RIGHTS BY PLACING HIM IN DANGER TO HIS WELL BEING VIA BY Placing
HIM IN GENERAL POPULATION WHERE VIOLENT PRISONERS WERE KNOWN by Prison
OFFICIALS TO PREY ON SUCH TRANSEXUALS), THIS CASE DEFINES MY CURRENT SIT-
UATION AND FORMS THE BASIS FOR THIS "BIVENS" COMPLAINT, IN THAT:

(1.) ON August 15, 2018 WHILE AT THE ESTELLE UNIT LIVING IN EXTREME
HEAT SITUATIONS I APPROACHED CAPTAIN Mc MURREY ESTELLE UNIT
AND EXPLAINED ALL OF THE ABOVE TO HIM AND ADDED THAT I
THOUGHT I WAS SUPPOSED TO BE HOUSED IN AN 88° LIVING
CONDITION ENVIRONMENT. HE THEN ASKED AND TOOK MY Prison
I.D. INTO THE CLASSIFICATION OFFICE OF THE ESTELLE UNIT.
THEN APPX. 20 MINUTES LATER RETURNED AT TOLD ME "... YOU ARE
CONSIDERED A PACK UNIT INMATE & "IN-ACTIVE" STATUS (AS PER
STATE CLASSIFICATION... AND WE ARE AWARE OF YOUR LITIGATION...
WE CAN HOUSE YOU IN THE HEAT...."). WITH THAT I RETURNED TO
D 1 CELLBLOCK CELL 3-09-B WHERE I WAS EXPOSED TO THE

FOLLOWING:

● August 15, 2018 — THROUGH — August 17, 2018  THE RECORDED HEAT AND HEAT INDEX WERE ANYWHERE FROM 104°-110°f. I SAW THIS ON THE FOX NEWS WEATHER STATION, YET, IN THE CELLS THE TEMPERATURE ON THE THIRD TIER (AS I WAS HOUSED ON 3 ROW CELL 9, bottom = D2 - 309 b) WAS WAY HIGHER THAN THIS DUE TO POOR VENTILATION AND WINDOWS THAT ARE SEALED SHUT (WINDOWS ARE PART OF THE D2 CELL BLOCK WALL), WINDOWS ON THE TOP TIER DO NOT OPEN (THESE FACTORS CONTRIBUTED TO MUCH HIGHER TEMPS.). DURING THIS PERIOD THERE WAS NEVER ANY TDCJ STAFF TO COME MEASURE THE TEMPERATURE ON THIS WING - THERE WAS NEVER ANY SUCH "GOOD FAITH" ACTS BY THE TDC STAFF TO MONITOR MUCH LESS MITIGATE HEAT.

● THE POWER WENT OFF IN THE D2 DAYROOM ON August 15 - 17, 2018 PERIODICALLY DURING THE HEAT OF THE DAY WERE I WAS EXPOSED TO EXCESSIVE, EXCESSIVE HEAT VIA AN OVERCROWED DAYROOM (UP TO 100 INMATES STUFFED IN), NO FANS, AND BOSSES WHO REFUSED TO INGRESS / EGRESS TO THE CELLS, WHICH ARE LIVING AREAS SEPERATE FROM THE DAYROOMS, WHERE I COULD HAVE SOUGHT RESPITE VIA MY FAN.

● DURING THIS 3 DAY PERIOD OF August 15 - 17, 2018 while HOUSED ON D2 - 309 b cell, AS I HAD BEEN LOCKED IN THE CELL (IN EXTREME HEAT) FOR 3½ HOURS (AND THE POWER had WENT OUT IN MY CELL), I WAS REFUSED RESPITE BY Correction- AL OFFICERS WHO DON'T WEAR I.D. BADGES SO THAT I COULD IDENTIFY (WHO) TO "WRITE - UP," WHO WOULD SEEM AGITATED OR TOTALLY INDIFFERENT TO MY REQUESTS FOR RESPITE OR THEIR NAMES.

● EVERYDAY AND EVERY NIGHT, FOR THE ABOVE 3 DAYS, AS I WAS LOCKED IN MY CELL I HAD NO ACCESS TO COOL WATER (ONLY PROVIDED IN

4.

THE DAYROOM BELOW. **NOTE** NEVER ONCE DURING THOSE 3 DAYS DID A CORRECTIONAL OFFICER EVER HAVE AN S.S.I. (SUPPORT SERVICE INMATE - INMATES ASSIGNED AS JANITORS, ETC... TO EACH WING ON EVERY SHIFT), TO SERVICE THE CELLS (LIVING AREAS) WITH WATER. NEVER ONCE WAS THERE A "WELLNESS CHECK" DONE FOR ME - NEVER ONCE WAS I ALLOWED RESPITE OR COOLDOWN SHOWERS WHEN I REQUESTED SO OF BOSSES AFTER "RACK TIME" HOURS, FROM APPX. 10:30 pm - to - 4:30 a.m. THIS IS LARGELY DUE TO THE FACT THAT THE WARDEN VAUGHN DOES NOT TRAIN HIS OFFICERS IN THE PROPER "HEAT MITIGATION" DICTATES CONSISTENT WITH TDCJ - CID's "GOOD FAITH" POLICY IN ADMINISTRATIVE DIRECTIVE 10.64 (REV. 9) MARCH 26, 2018, A DIRECTIVE RECENTLY REVISED IN LIGHT OF THE COLE V. COLLIER 4:14 - CV 1698 CIVIL SUIT. THE WARDEN'S ATTITUDE, - ASSISTANT WARDEN VAUGHN'S; ATTITUDE TWORD THE WELFARE OF PRISONER'S HERE AT THE ESTELLE UNIT, AND, ESPECIALLY TWORDS MY WELFARE; IS A HOSTILE ATTITUDE IN NATURE, AND WARDEN VAUGHN HAS A RECORD - (A PAPER TRAIL) - THAT WILL EASILY SHOW HIS PROPENSITY FOR BEING A "CRUEL AND UNUSUAL" PUNISHER OF PRISONERS FROM THE TIME HE WAS A MAJOR HERE AT THE ESTELLE UNIT (IN THE NEAR PAST), EXTENDING TO HIM BEING PROMOTED TO AN ASSISTANT WARDEN. NONE OF HIS BOSSES WEAR NAME TAGS SO THAT WHEN YOU ASK THEM FOR THEIR NAMES THEY WON'T TELL YOU (THIS HAS HAPPENED TO ME MORE THAN 5 TIMES IN THE LAST 2 WKS.), THIS IS DIRECTLY ATT-RIBUTED TO THE WARDEN AS NOT ENFORCING COMPLIANCE AMONG HIS STAFF. THIS HAS SOUGHT TO THWART MY GRIEVANCE PRO-CESS. YET I HAVE CURRENT GRIEVANCES AND WILL PROVIDE GRIEV-ANCE NUMBERS LATER IN THIS MOTION. THE BOSSES ACTIONS ARE A DIRECT RESULT OF WARDEN VAUGHN'S DELIBERATE INDIFF-ERENCE TO ME AND ALL THE OTHER PRISONER'S HERE ON THE ESTELLE UNIT. **END OF NOTE**

- OVERCROWDING IN THE CHOW HALL (DINING HALL — SOUTH SIDE), IN WHICH A CAPACITY OF 234 INMATES BUT AT ANY GIVEN TIME DURING LUNCH OR DINNER THERE WILL BE 300 - to - 400 INMATES WHILE I'M STUCK IN THE SWELTERING HOT SOUTH DINING HALL FOR AN HOUR OR BETTER AT TIMES. AND THERE ARE ONLY 4 STATIONARY FANS SET HIGH IN THE AIR — WITH NO PROPER VENTILATION AND BOSSES THAT DON'T SEEM TO CARE AS THIS IS THEIR NORMAL.

- ON EITHER THE 15, 16, or 17th, OF AUGUST 2018 AS I HAD STAYED IN THE OVERCROWDED DINING ~~CHOW~~ HALL FOR ONE HOUR WITH, AT LEAST, 110° HEAT INDEX, I ALMOST PASSED - OUT, UPON EGRESS BY A CORRECTIONAL OFFICER (C.O.) MS. SMITH, I ASKED FOR ACCESS TO RESPITE AND SHE LAUGHED AT ME. SHE DIDN'T JUST TURN HER BACK" ON ME, SHE RIDICULED ME,

IT WAS UNDER THESE CONDITIONS FROM AUGUST 15th - 17th 2018 THAT I APPROACHED CAPTAIN McMURREY, AS STATED ABOVE, WHO INFORMED ME I WAS A PACK UNIT "IN ACTIVE" STATUS INMATE.

## ALLEGATIONS: AUGUST 23, 2018 - TO - SEPTEMBER 14th, 2018 (Present)

- ON AUGUST 23, 2018 I WAS SHIPPED FROM THE LEBLANC UNIT IN BEAUMONT TX., TO THE ESTELLE UNIT IN HUNTSVILLE, TX. AND REASSIGNED TO THAT UNIT AS PER THE STATE CLASSIFICATION OF THE TDCJ-CID CLASSIFICATION AND RECORDS DEPT. I WAS REASSIGNED THERE DUE TO NEEDING OCCUPATIONAL THERAPY TO GAIN USE OF MY RIGHT HAND SINCE I HAD AN OPERATION IN THE HOSPITAL GALVESTON UTMB IN MARCH 2018 IN WHICH A TITANIUM PLATE WITH SEVERAL SCREWS WERE PUT IN MY WRIST/ARM.

    UPON ARRIVAL AT THE UNIT A SGT. CRAIS WAS WORKING THE INTAKE ROOM WHERE HE ALLOWED HIS S.S.I. (AN INMATE) TO FILL OUT AND HANDLE 100% VERY SENSITIVE AND PERSONAL PAPER-WORK ON ME PERTAINING TO VERY, VERY PERSONAL MEDICAL AND INFORMATION, for EX. QUESTIONS LIKE: "WAS I AFRAID FOR MY LIFE?," "ANY ENEMIES?," "WAS I A HOMOSEXUAL?" ALL THESE QUESTIONS THAT I DIDN'T FEEL COMFORTABLE WITH AND INFORMATION THAT ANOTHER PRISONER IS DEFINITELY NOT TO HAVE ACCESS TO ANOTHER PRISONER. THIS WAS MY WELCOME TO REASSIGNMENT.

Shortly thereafter I was taken to the main hallway where a medical representative asked me my name and that was it and maybe a couple more questions about allergies and my vitals. Then I was led to the D 1 Cellblock (a 24-hour-7 days per wk.) Lock-up. I was not provided a cup to drink water from — I was not given any toillete paper — and I had no mattress. The temperature was sweltering as it was past mid-day, so I was immediately subjected to the same extreme heat that I was in on the Stringfellow Unit, or that the Pack Unit inmates were before we were ordered via injunction to 88° living conditions. In this one act here TDCJ-CID Defendants were totally in violation of deliberate indifference to my well being by placing me in such conditions in defiance of the federal Judge's previous orders(s).

Once again there were two (S.S.I.'s) Support Service inmates running the block, and once again, no one brought me cold water, I was refused a shower as "showers had already been ran" earlier in the day. On D 1 cellblock there was no such thing as "cooldown" showers or access to respite — as I even had to be placed in handcuffs to be moved and I'm classified a General Population inmate.

When dinner time came, once again, the 2 inmates passed out all food — I didn't get cool water or juice because I had no cup — I had to eat with my hands.

⦿ On Friday August 24th, 2018 at appx. 10:00 — 10:30 a.m I was taken in handcuffs to Unit Classification Committee to officially be reassigned to the unit. The Assistant Warden Vaughn chaired the meeting (no one identified themselves) — (which accounted for me filing a grievance on Warden Brewer whom I was told chaired the meeting by the unknown Sargaent who escorted me back to D 1 Cellblock - will explain further below). At that time Warden Vaughn asked about the extent of the problem with my right hand. I explained the extent of my impairment, i.e.

THAT I COULDN'T PERFORM BODILY FUNCTIONS, CLIMB, OR LIFT WITH MY RIGHT HAND SINCE THESE SCREWS AND PLATE HAVE BASICALLY "FUSED" THE JOINTS TOGETHER. THEN WARDEN VAUGHN REPLIED "...I'M PUTTING YOU IN THE KITCHEN. YOU CAN HOP AROUND AND WORK WITH ONE HAND..." I REPLIED "...THAT'S YOUR STATEMENT?" AT THAT POINT HE ACTED LIKE HE WAS GOING TO JUMP OUT OF HIS SEAT AS HE SAID "... (SEE EXHIBIT I. pp. 27, AND EXHIBIT II. pp. 45) BITCH, I'LL FUCK YOU UP... YOU WANT TO GO SOME ROUNDS WITH ME... I DON'T CARE ABOUT YOUR LITIGATION..." AT THAT POINT I GOT SO SCARED I DON'T EVEN KNOW WHAT ELSE HE SAID, I WAS IMMEDIATELY ESCORTED BACK TO D1 BY A WHITE SHORT-HAIRED SARGEANT WHO WOULDN'T IDENTIFY HIMSELF, WHOM STATED "...I NEVER HEARD HIM TALK LIKE THAT BEFORE..." (THIS LEADS ME TO BELIEVE THIS WAS A FAIRLY NEW SGT.). I TOLD THE Sgt, AS he WAS WALKING OFF THAT I WISHED TO FILE AN IMMEDIATE LIFE END ANGERMENT AGAINST THIS WARDEN - HE FENORED ME, I YELLED FOR A GRIEVANCE - HE FENORED ME. THE FEELING OF DREAD BEGAN TO SINK IN. LATER THAT NIGHT I WAS MOVED TO CELLBLOCK D2 AND PLACED BACK IN GENERAL POPULATION. I THEN APPROACHED SARGEANT ZWAR 2nd Shift AT APPX. 6:30-7:00 P.m Aug. 24, 2018 AND TOLD HIM I WISHED TO FILE A LIFE ENDANGERMENT AGAINST WARDEN VAUGHN (WHOM I THOUGHT WAS BROWER AT THE TIME SR. WARDEN BROWER), he REPLIED "...GET WITH ME TOMORROW..." ONCE AGAIN, ANOTHER SUPERVISOR PRISON OFFICIAL TURNED HIS BACK TO MY PLIGHT.

- August 24th-27th TEMPERATURES AT 104°-110° HEAT INDEX IN THE LIVING AREAS - WELL OVER THAT IN THE DINING HALL- DAY ROOM - AND SHOWER AREAS.

- ON 8-25-2018 IN D2 CELLBLOCK DAYROOM THE POWER WENT-OFF FOR ONE HOUR. THERE WAS NO ICE WATER IN THE COOLER FOR 2 HOURS, from 10:50 a.m. - 12:50 p.m. WHILE (S.S.I's) SERVICE THE PRISON OFFICIALS IN THE HALLWAYS AND PICKETS EVERY 30 min. to 1 hr. ICE AND REFRESHMENTS. LATER THE SAME DAY I WAS LOCKED IN THE CELL FROM 3:00pm TO 5:45pm WITH NO INGRESS OR EGRESS (IN AND OUT) ACTION DENYING ME ACCESS TO COOL WATER IN THE DAYROOM AND RESPITE AREAS IN THE MAIN HALLWAY.

- ON 8-26-2018, ONCE AGAIN, WHILE IN D2 DAYROOM AT 10:00am THE POWER WENT-OFF AND STAYED OFF FOR ONE AND A HALF 1½ HOURS.

I ASKED VISITING (C.O.) MRS. GREGORY IF I COULD GO TO RESPITE, DUE TO THE FACT THAT I WAS OVERHEATED AT THE TIME, AND SHE JUST LAUGHED AT ME.

- ALSO, ON 8-25-2018 DURING 2ND SHIFT AT D2 CELLBLOCK AT APPX. 6:00PM I ASKED (C.O.) OMBURO IF I COULD GO TO THE RESPITE AREA DUE TO BEING IN THE OVERCROWDED DAYROOM, DRIPPING WITH SWEAT, AND HE REPLIED "... I HAVE TO SHAKE DOWN." ONCE AGAIN I WAS DENIED RESPITE BY A TDCJ OFFICER.

- ON 8-26-2018 THERE WAS NO INGRESS/EGRESS ON D2 CELLBLOCK FROM THE CELLS TO THE DAYROOM, (DEPRIVING ME OF COOL WATER AND RESPITE ACCESS); FROM 7:00 AM - 9:45 AM. LATER WHEN I GOT OUT IN THE HALL I ASKED SEVERAL C.O.'s, WAS DIRECTED TO Sgt. ZWAR ONCE AGAIN, WHOM I ASKED FOR A "COOL DOWN" SHOWER AND WAS TOLD BY Sgt. ZWAR "... WE DON'T DO 'COOL-DOWN' SHOWERS." THEREFORE ONCE AGAIN TDC TURNED THEIR COLLECTIVE BACKS ON ME.

- ON 8-26-2018 AFTER BEING IN THE SOUTH SIDE DINING HALL FOR ONE HOUR WITH APPX. 400 PRISONERS IN THERE, DESPITE THE 234 CAPACITY WRITTEN ON THE WALLS, WITH NO VENTILATION AND ONLY 4 SMALL STATION-ARY FANS - THE DOOR WAS FINALLY OPENED TO EGRESS BY A Sgt. CISNEROS AS I EXITED I ASKED HIM FOR RESPITE AND HE REPLIED "... HOW LONG YOU BEEN LOCKED UP?" I REPLIED "... 20 PLUS YEARS." HE REPLIED "THERE WAS NO RESPITE BACK THEN." THEN HE LITERALLY TURNED HIS BACK TO ME AND IGNORED ME. THIS WAS APPX. 10:45 A.M, SOUTH HALLWAY.

- ON 8-27-2018 FROM 9:45 AM TO 11:45 IN THE D2 DAYROOM THE POWER WENT OFF AGAIN - AN INMATE HAD TO EXPLAIN TO THE PICKET BOSS WHERE THE BREAKERS WERE AND HOW TO TURN POWER BACK ON. ONCE AGAIN THESE GUARDS HAVEN'T EVEN BEEN TRAINED TO HEAT ISSUES MUCH LESS PRE-PARED.

- ON 8-29-2018 FROM 9:40 TO 11:10 AM I WAS "COOPED-UP" IN AN OVER-CROWDED AND OVER-HEATED KITCHEN WHERE I ASKED (C.O.) WATKINS "WHY I HAD TO BE IN AN OVERCROWDED KITCHEN FOR SO LONG?" REPLY "... WRITE IT UP!" THIS SHOWS THE GENERAL ATTITUDE OF THE PRISON STAFF HERE AT THE ESTELLE UNIT.

- THERE ARE PEOPLE HERE WHO DO NOT HAVE FANS: DEWAYNE COX #2124633 D2-210 B HAS BEEN WITHOUT A FAN FROM 9/6/2018 - TO - 9/14/2018 FINALLY FILED A STEP 1 GRIEVANCE AS HE IS A MEDICAL PATIENT WHO

WHOM TAKES PSYCHTROPIC DRUGS AND HAS HEAT RESTRICTIONS.

● ON 8-29-2018 IN THE SOUTH DINING HALL FROM 5:30pm-7:00pm IT WAS OVERCROWDED AND VERY OVERHEATED WHERE PRISONERS ARE ALLOWED TO "CUT-IN" FRONT OF THE CHOW LINE (THAT'S ONE REASON WHY IT TAKES SO LONG) PROMOTING VIOLENCE AS THE PRISON GAURDS JUST IGNORE IT, THERE'S NO OVERSIGHT, NO SUPERVISION. SO I ASKED (C.O.) OZONA "... WHY HE ALLOWED ALL THIS DISREPECTING OF "CUTTING-IN-LINE", AND HE IGNORED ME, I ASKED Sgt. Ferguson THE SAME QUESTION HE TOO IGNORED ME. THIS IS A SERIOUS PROBLEM THAT ENDANGERS ME AND OTHERS HERE AT THE ESTELLE UNIT, I HAVE FILED A STEP 1 & 2 ON ALL OF THE ABOVE NO ONE HAS RETURNED MY GRIEVANCES SEE EXHIBIT 1.

● ON 9-10-2018 Johnathon Pena #2205572 D2-315B AT 3:30pm Appx, Complained TO NURSE MONROE AT THE ESTELLE UNIT REGIONAL MEDICAL FACILETY (RMF), AS HE IS A DIALYSIS PATIENT, ABOUT THE MOLDY CIELINGS AND FLOORS, LEAKY TUBES ON THE DIALYSIS MACHINE AND OVERALL UNSANITARY CONDITIONS SURROUNDING THE MEDICAL FACILITY PUTTING HIM AT RISK OF DANGER TO HIMSELF OF INFECTION OR WORSE, HE ENDED UP HAVING TO FILE A GRIEVANCE STEP 1 AND IS AWAITING AN ANSWER.

● GARY SLUUS #1874834 CELLBLOCK G1-119B Complains OF HAVING SEVERAL HEAT RESTRICTIONS of: 20(A) MEDICAL HEAT RESTRICTION NO TEMP. EXTREMES, 19(b) AND 20(b) Psychiatric RESTRICTION HEAT EXTREMES (NO) AND NO DIRECT SUNLIGHT BUT CLAIMS ALL THE Same ISSUES ABOVE. HE IS 60 yrs. OLD YET THIS WARDEN AND CLASSIFICATION SEEKS NOT TO HOUSE HIM IN 88°.

● DAVID TURNER #790921 CELLBLOCK D2-112B ON 8-31-2018 WAS LIVING IN THE Same ABOVE "HEAT EXTREMES" AS HE HAS THREE HEAT RESTRICTIONS: Pyschiatric NO WORK IN DIRECT SUNLIGHT, Psychiatric NO TEMPERATURE EXTREMES, AND Psychiatric No Humidity Extremes, YET, ONCE AGAIN, HERE AT THE ESTELLE UNIT THE PRISON STAFF IS DELIBERATELY INDIFFENT TO HIS AND MY HEALTH.

⑤ IN APPX. 8/26/2018 GARY COX #574666 DIED FROM A POSSIBLE ANEURYSM (QUESTIONABLE) HERE AT THE ESTELLE UNIT WHEN 2 WKS. PRIOR HE HAD COMPLAINED OF "NECK PAIN, ONLY TO BE "PUT-OFF" BY THE MEDICAL STAFF HERE AS A TROUBLE MAKER, HE THEN GOT MORE ANIMATED IN HIS COMPLAINTS TO STAFF WHO "LOCKED HIM-UP IN A-WING, WHERE LATER HE WAS FOUND DEAD, RUMOR IS HE WAS BEAT UP BACK IN A WING WHERE HIS BRAIN HEMMORAGED.

⑥ Appx. 2 wks. ago (maybe September 1ST) HERE AT THE ESTELLE UNIT AND IN FRONT OF THE SOUTH DINING HALL (MAIN HALL) INMATE Lloyd G. HARGRAVES #1833602 WITNESSED (C.O.) GREGORY BEAT AN INMATE (WE ARE CALLING THIS INMATE DAVID RICE? DAVIS — A WHITE MALE—BEARDED~HOMELESS MAN FROM DALLAS), THIS POOR INMATE HAS A HISTORY OF BEING MENTALLY ILL—YET THIS BOSS BEAT HIM IN A VIOLENT NATURE—LATER THIS INMATE (DAVID DAVIS?) WAS TAKEN TO THE INFAMOUS A-WING WHERE HE WAS FOUND DEAD. A LT. GoodALL HAS BEEN TRANSFERRED TO ANOTHER SECTION OF THE PRISON—BECAUSE ONCE AGAIN— RUMOR IS LT. Goodall KILLED this man.

⑦ INMATE MARK W. KNOX II TDC#652356 E2-CELLBLOCK AT THE ESTELLE UNIT IS A PRISONER WHO RECENTLY HAD A HEAT STROKE AT THE ESTELLE UNIT AND HAS BEEN SUBJECTED TO THE SAME DELIBERATE INDIFFERENCE. HE IS A 41 YR. OLD WHITE MALE WHO HAS THE FOLLOWING "HEAT RELATED " RESTRICTIONS:

19 a MEDICAL: NO WORK IN DIRECT SUNLIGHT
19 b Psych : NO WORK IN DIRECT SUNLIGHT
20 a MEDICAL: NO TEMPERATURE EXTREMES
20 b Psych: NO TEMPERATURE EXTREMES
21 a MEDICAL: NO HUMIDITY EXTREMES
21 b Psych : NO HUMIDITY EXTREMES

> EXHIBIT 6.

HE IS A PSYCHIATRIC PATIENT WHOM HAS FILED MANY GRIEVANCES STEP 1'S AND STEP 2'S ADDRESSING THE LACK OF HEAT MITIGATION, DELIBERATE INDIFFERENCE IN THE FOLLOWING:

(1.) I-127, I-128 (STEP 1 & STEP 2) GRIEVANCE NUMBER # 2018140534 CONCERNING (FILED MAY 23, 2018) HEAT RESPITE DENIALS - IN WHICH MR. KNOX CITED *Cole v. Collier* AND MEDICAL PATIENTS SUCH AS HIMSELF BEING DENIED RESPITE ON NUMEROUS OCCASIONS AND THAT HE ASKED TO BE PLACED IN 88° LIVING CONDITIONS ON HIS STEP 1 GRIEVANCE, ASSISTANT WARDEN G. VAUGHN ADDRESSED HIS GRIEVANCE AS FOLLOWS: "... ADMINISTRATION WAS MADE AWARE OF YOUR ALLEGATIONS AND CONDUCTED AN INVESTIGATION. YOU WERE INTERVIEWED BY STAFF AND FAILED TO PROVIDE A NAME OF THE ALLEGED PERSON THAT DENIED YOU ACCESS TO THE RESPITE AREA. SUPERVISORY STAFF ARE AWARE OF THESE ALLEGATIONS AND WILL MONITOR THIS ISSUE. OFFENDERS WHO REQUEST RESPITE AREA WILL BE AFFORDED THIS ACCESS. NO FURTHER ACTION WARRANTED."

IN MR. KNOX'S DEFENSE, THE WARDEN'S ANSWER IS NOT TRUE GIVEN THE FACT THAT WHEN I ARRIVED HERE ON THE UNIT 8-15-18 THE SAME DENIALS HAPPENED TO ME. THIS WARDEN'S ANSWER IS VERY SIMILAR TO THE WARDEN'S ANSWERS IN GRIEVANCES PRESENTED AS EVIDENCE OF DELIBERATE INDIFFERENCE IN THE *Cole v. Collier* ACTION.

### EXHIBIT. 3

MR. KNOX FOLLOWED THIS STEP 1 UP WITH AN APPEAL VIA A STEP 2 GRIEVANCE (SAME GRIEVANCE # 2018140534) - WHERE MR. KNOX APPEALED THE FACT THAT WARDEN VAUGHN STATED STAFF HAD "INTERVIEWED" MR. KNOX. MR. KNOX CLAIMS HE WAS NEVER INTERVIEWED AND THAT IS WHY WARDEN VAUGHN DID NOT IDENTIFY STAFF MEMBERS NAME WHOM SUPPOSEDLY IDENTIFIED HIM. THIS STEP 2 WAS FILED ON July 11ᵗʰ, 2018 AND SUBSEQUENTLY ANSWERED BY A M. BLALOCK ON July 31ˢᵗ, 2018, JUST A SHORT 20 DAYS LATER IN THESE EXACT WORDS "... AN INVESTIGATION WAS CONDUCTED INTO YOUR CONCERNS. ADMINI-STRATION IS AWARE OF YOUR ALLEGATIONS AND WILL CONTINUE TO MONITOR THE RESPITE AREAS. FAILURE TO COMPLY WITH AN INVESTIGATION IS NOT IN YOUR BEST INTEREST. NO FURTHER ACTION IS WARRANTED." THIS RESPONSE SEEMS A BIT ODD THAT THE FACT FINDER WOULD OFFER ADVICE THAT SEEMS TO BE OF A LEGAL NATURE AND/OR COERCIVE. THIS IS THE EPITOME OF THE TDC STAFF'S "STATE OF MIND", AND/OR JUST PLAIN INDIFFERENCE TOWARDS MINE AND MR. KNOX'S' PLIGHT.

### EXHIBIT 4.

(2.) MR. KNOX THEN FILED ANOTHER STEP 1 GRIEVANCE # 2018148664 CONCERNING (Filed June 10th 2018) ACCESS TO "COLD WATER" SHOWERS DURING THE HOTTEST MONTHS OF THE YEAR, i.e. JULY, AUGUST, SEPTEMBER, IN WHICH HE WAS INTERVIEWED ONE DAY AFTER HE COLLAPSED FROM HEAT EXHAUSTION ON MAY 29, 2018 (MEDICAL RN KENT DIAGNOSED THIS EP-ISODE AS HEAT EXHAUSTION) (ALSO LVN PAMELA VANLANDINGHAM TOOK OVER HIS CARE AND TREATED HIM FOR HEAT EXHAUSTION). MAJOR SMITH INTERVIEWED MR. KNOX IN WHICH MR. KNOX STATES IN THIS GRIEVANCE THAT MAJOR SMITH NOT ONLY DENIED HIS REQUESTS AT HEAT MITIGATION VIA "COOL SHOWERS - MORE OFTEN THAN THE ONE SHOWER PROVIDED TO US DAILY, BUT THAT THE MAJOR SPECIFICALLY STATED "... I WON'T DO THINGS HERE

LIKE YOU SAY THEY DO ON OTHER UNITS (LIKE Hughes UNIT), AND PROVIDE YOU WITH COLD WATER SHOWERS ...." MR. KNOXXS' GRIEVANCE WAS TO GRIEVE THE INACCESS TO "COLD WATER" SHOWERS ON THE WINGS - LIVING AREAS. SENIOR WARDEN BREWER ANSWERED THIS GRIEVANCE ON July 23, 2018 WITH THIS EXACT RESPONSE, "... YOUR ALLEGATIONS HAVE BEEN INVESTIGATED BY THE GRIEVANCE OFFICE, OFFENDERS ARE ALLOWED ACCESS TO COLD WATER SHOWERS UPON REQUEST. BOTH NORTH AND SOUTH SHOWERS HAVE A ROW DEDICATED TO COLD SHOWERS. NO FURTHER ACTIONS ARE REQUIRED BY THIS DEPARTMENT." THIS UNDERLINED PART OF WARDEN BREWERS STATEMENT IS A "BALD FACED LIE" AS MY OWN TRUE EXPERIENCE WILL ATTEST TO, SINCE I HAVE BEEN HOUSED ON D2 CELL BLOCK SOUTHSIDE, RIGHT ACROSS THE HALL FROM MR. KNOXS' CELL BLOCK AND NOT ONLY IS THERE ANY "COOL SHOWERS" BEING OFFERED ON D2 CELL BLOCK - BUT I HAVE ALSO BEEN DENIED REPEATEDLY MYSELF FOR ANY TYPE OF "COOL DOWN" SHOWER AT ANY GIVEN TIME IN ANY AVAILABLE PLACE HERE AT THE ESTELLE UNIT SINCE 8-23-2018 - TO DATE - SEPTEMBER 14TH 2018.

**EXHIBIT 5.**

(3.) MR. KNOX THEN FILED ANOTHER STEP 1 GRIEVANCE # 2018151415 ON June 18, 2018 TO ADDRESS THE FACT THAT HE HAS SEVERAL "HEAT RESTRICTIONS" AND HAS A HISTORY OF "HEAT EXHAUSTION" YET TDCJ-CID IS HOUSING HIM UNDER DELIBERATE INDIFFERENCE EXPOSING HIM TO SEVERE HARM VIA THE EXTREME HEAT CONDITIONS AND THIS EQUATES TO CRUEL AND UNUSUAL PUNISHMENT. UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION. HE WENT ON TO POINT OUT THE LACK OF "GOOD FAITH" BY THE TDCJ-CID AT HEAT MITIGATION VIA INOPERABLE VENTS (VENTILATION) ON THE RUNWAYS CAUSING EXTREME HEAT AND HUMIDITY CAUSING HIM RASHES, NAUSEA, AND LABORED BREATHING, (SOME OF MY SAME COMPLAINTS ABOVE). HE ASKED TO BE HOUSED IN A DIFFERENT CELL TO HOPEFULLY BE CLOSER TO BETTER CIRCULATION LIKE IN E2 206 CELL. SENIOR WARDEN BREWER ANSWERED THIS GRIEVANCE, EXACTLY: "... YOUR ALLEGATIONS HAVE BEEN INVESTIGATED BY THE GRIEVANCE OFFICE. HEAT RESTRICTED OFFENDERS ARE HOUSED IN CELLS 1-15 ON 2 ROW. YOU ARE IN COMPLIANCE WITH YOUR CURRENT RESTRICTIONS, AS PER POLICY. NO FURTHER ACTIONS ARE REQUIRED BY THIS DEPARTMENT." NOTICE THERE WAS NEVER A REFERENCE TO THE VENTILATION. THE EMPHASIS WAS ON

THE WARDEN BEING CORRECT IN MR. KNOX BEING IN CELL E2-213, AS OPPOSED TO CELL E2-206. THERE'S NO CONCERN FOR HEAT MITIGATION IN THIS STATEMENT, NONE WHATSOEVER FOR NO MATTER WHERE YOU ARE HOUSED ON 2 ROW DURING THE MONTH OF JULY, THE HEAT INDEX (IN CELL) IS PRETTY MUCH ALWAYS GOING TO BE WELL OVER 90° NOT INCLUDING THE HUMIDITY EQUATING TO A HEAT INDEX. ONCE AGAIN TDC STAFF TURNING THEIR BACKS ON THE EXTREME HEAT ISSUES,

MR. KNOX FURTHER STATES THAT HE FILED THE FOLLOWING:

(A.) I-127 (STEP 1) AND I-28 (STEP 2) GRIEVANCE# 2018142734 ON 6-1-2018 CONCERNING HIS "HEAT EXHAUSTION" EPISODE (STILL OUT ON EXTENSION) IN WHICH HE RECANTS HIS EPISODE IN THESE WORDS, "... ON 5-29-2018 I HAD AN EPISODE THAT RN KENT DIAGNOSED AS HEAT EXHAUSTION. ICE PACKS WERE APPLIED TO MY NECK, ARM PITS, & GROIN. A FAN WAS HELD ON ME, AN I.V. STARTED, ICE WATER GIVEN LIBERALLY, & PHENERGAN INJECTED. A CALL FROM THE WARDEN SUMMONED RN KENT. SO, LVN PAMELA VANLANDINGHAM TOOK OVER MY CARE. IT WAS CHAOTIC & FOUR OTHER HEAT-RELATED CAME IN FROM VARIOUS PARTS OF THE PRISON. UPON RN KENT'S RETURN, SHE ANNOUNCED "... I JUST GOT MY ASS CHEWED-OUT. THE WARDEN SAID NOTHING COMING IN HERE IS TO BE CALLED 'HEAT-EXHAUSTION.'" FROM THAT POINT, ALL HEAT COMPLAINTS WERE TOLD TO SUBMIT TO A RECTAL THERMOMETER, FOR A CORE BODY TEMPERATURE, OR BE CONSIDERED AS RE-FUSING TREATMENT. MANY PRISONERS BALKED AND LEFT THE INFIRMARY. THOSE WHO STAYED HAD THEIR TEMPERATURE TAKEN RECTALLY, (MULTIPLE TIMES) IN THE OPEN VIEW OF OTHER PRISONERS, GAURDS, NURSES, AND A SECURITY CAMERA; NO ATTEMPT AT PRIVACY WAS MADE BY TDC STAFF IN ANY CAPACITY. WHEN MY CONDITION WAS DIAGNOSED AS HEAT EXHAUSTION, GAURDS WERE SENT TO THE E2 CELL BLOCK DAY ROOM AND MY CELL WITH A TEMPER-ATURE GUN TO MEASURE HEAT - MY CELL WAS 97°F., WITHOUT (MINUS) THE HEAT-INDEX, WITH 2 FANS ON HIGH (PERSONAL FANS). DISSATISFIED WITH THE FIRST GUNMAN'S REPORT, THE WARDEN SENT FOR ANOTHER REPORT, WHO GUNNED NEXT TO THE SHADOWED RECESS NEXT TO THE TOILET, ICED WATER WAS SUDDENLY BROUGHT ROUTINELY.

MAJOR SMITH RETRIEVED ME FROM MY CELL ON 5-30-2018 AND

AND ATTEMPTED TO CONVINCE ME THAT I HADN'T SUFFERED HEAT EXHAUSTION: THAT, MY CORE BODY TEMPERATURE WASN'T HIGH ENOUGH," "THAT IT WAS VERTIGO," OR, "THAT IT WAS THE FLU." I THEN ENQUIRED AS TO HIS MEDICAL QUALIFI- CATIONS, AND HOW HE WAS PRIVY TO MY MEDICAL RECORDS? WHEN I BROUGHT-UP THE WARDEN'S CEASE AND DESIST ORDER TO RN KENT, HE SAID IT WAS NECESSARY TO CURTAIL PANIC," THAT "THEY'RE ALL JUST SCARED." OUR CONVERSATION WAS LARGELY UNPRODUCTIVE, WITH THE EX- CEPTION OF HEAT RESPITE REQUESTS' TEMPORARILY BEING RESPECTED.

CAPTAIN ANDERSON CALLED ME OUT FOR AN INTERVIEW ON 6-1-2018 CONCERNING MY HEAT EXHAUSTION EPISODE. SHE TOLD ME TO "LEAVE IT ALONE," TO "DO MY TIME QUIETLY," "LEST I END UP BEFORE HER." (SHE IS THE DISCIPLINARY CAPTAIN).

(B.) MR. KNOX FURTHER STATES THAT:

- HE WAS TREATED FOR HEAT RASH BY RN NORTHCUT ON 6-23-18,
- WENT TO MEDICAL, ILL FROM HEAT, ON 7-14-2018,
- HE BEGAN RECORDING THE TEMPERATURES (DISPLAYED DIGITALLY IN THE GAURD PICKETS) WHICH RESULTED IN THE FOLLOWING:

| Date | Temp | | Date | Temp |
|---|---|---|---|---|
| 7-18-18 | 105°/91° | | 8-6-18 | 92°/89° |
| 7-19-18 | 102°/91° | | 8-7-18 | 92°/88° |
| 7-20-18 | 105°/92° | | 8-8-18 | 100°/88° |
| 7-21-18 | 105°/91° | | 8-9-18 | 92°/88° |
| 7-22-18 | 107°/92° | | 8-10-18 | 98°/88° |
| 7-23-18 | 105°/91° | | 8-11-18 | 99°/88° |
| 7-24-18 | 102°/92° | | 8-12-18 | 82°/84° |
| 7-25-18 | 110°/97° | | 8-13-18 | 89°/84° |
| 7-26-18 | 105°/91° | | 8-14-18 | (MISSED) |
| 7-27-18 | 106°/92° | | 8-15-18 | 103°/89° |
| 7-28-18 | 107°/92° | | 8-16-18 | 100°/89° |
| 7-29-18 | 106°/92° | | 8-17-18 | 104°/90° |
| 7-30-18 | 102°/90° | | 8-18-18 | (MISSED) |
| 7-31-18 | (MISSED) | | 8-19-18 | (MISSED) |
| 8-1-18 | 97°/88° | | 8-20-18 | 101°/91° |
| 8-2-18 | 93°/88° | | | |
| 8-3-18 | 98°/89° | | | |
| 8-4-18 | 96°/88° | | | |
| 8-5-18 | 97°/87° | | | |

*NOTE* MR. KNOX DOES NOT LIST THE TIMES TO THESE RECORDINGS.

- MR. KNOX ALSO STATES THE "HEAT RESTRICTION" LIST FOR PRISONERS LIVING ON E2 CELLBLOCK LISTED APPX. 45 offenders.

- MR. KNOX LASTLY STATES HE IS ON THE FOLLOWING MEDICATIONS: 800 mg. TEGRETOL - 150 mg. ZOLOFT - 60 mg. GEODON, - 15 mg. OXYBUTYNIN - DAILY AND THAT WARDEN GREGORY M. VAUGHN APPROVED HIM TO BE ABLE TO PURCHASE 2 FANS FROM COMMISARY, IN EXCHANGE FOR ME LEAVING THE HEAT ISSUE ALONE.

## THIS COMPRISES THE "FACTS" SECTION OF THIS CIVIL COMPLAINT

## CLAIMS FOR RELIEF - CAUSE(S) OF ACTION:

- The EIGHTH AMENDMENT CONSTITUTIONAL RIGHT TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT HAS BEEN VIOLATED, VIA THE DELIBERATE INDIFFERENCE BY THE TDCJ-CID STAFF LISTED HEREIN FOR EXPOSURE TO EXTREME HEAT TEMPERATURES, INTER ALIA, AND LACK OF HEAT MITIGATION MEASURES FROM THE TDCJ-CID STAFF AS OUTLINED IN THEIR OWN TDC MANUAL LABELED ADMINISTRATIVE DIRECTIVE AD. 10.64, AND BY THEIR BLANTANT DISREGARD OF THE DICTATES SET OUT IN THE COLE V. COLLIER CIVIL ACTION NO. 4:14-CV-1698. SEE ALSO BIVENS V. SIX UNKNOWN NAMED AGENTS OF FEDERAL BUREAU OF NARCOTICS 403 U.S. 388, 29 L.ED. 2d. 619, 91 S. Ct. 1999 (1971), AND ALSO SEE 42 USC § 1983, AND 18 U.S.C. § 3626 (b)(3).

## RELIEF REQUESTED - DEMAND FOR DAMAGES:

PETITIONER(S) JAMES ARTHUR MEEKS III #543366, AND MARK W. KNOX # 651356, BOTH REQUEST AND DEMAND AN ENTITLEMENT TO BOTH: DAMAGES IN THE AMOUNT OF $15,000.00 PER PERSON, AND AN INJUNCTION TO CEASE FURTHER CONSTITUTIONAL VIOLATIONS VIA BEING HOUSED IN AN 88° LIVING CONDITIONS SETTING IN AN ACTUAL TDCJ-CID (INSTITUTIONAL DIVISION) PRISON, OR IN THE LATTER, TO

BE HOUSED IN REQUESTED CONDITIONS ABOVE IN A FEDERAL PRISON.

<u>ARGUMENT</u> : <u>A.</u>

I, JAMES ARTHUR MEEKS III #543366 WAS ADDED TO THE <u>COLE V. COLLIER</u> Civil Action No. <u>4:14-CV-1698</u>, IN THE SUMMER MONTHS OF AUGUST - SEPTEMBER 2017, PLACED UNDER THE HONORABLE JUDGE KEITH P. ELLISON'S INJUNCTIVE ORDER TO HOUSE ME IN 88° LIVING CONDITIONS. THIS INJUNCTION WAS EXTENDED IN JANUARY 2018 TO LAST THROUGH THE SUMMER OF 2018 - ENDING ON OCTOBER 15th, 2018. ON AUGUST THE 15th - 17th 2018 - AND CONTINUING ON AUGUST 23, 2018 TO DATE (SEPT-EMBER 17th, 2018) I WAS TRANSFERRED AND REASSIGNED TO THE ESTELLE UNIT IN HUNTSVILLE, TX. AND TAKEN OUT OF THE 88° LIVING CONDITIONS BY THE WARDEN OF ESTELLE UNIT (VAUGHN - ACTING, WARDEN), AND BY THE STATE CLASSIFICATION BOTH ACTING IN THEIR CAPACITY AS TEXAS DEPARTMENT OF CORRECTIONS STAFF, AND EXECUTIVE DIR-ECTOR LORIE DAVIS OF TEXAS DEPARTMENT OF CORRECTIONS. IN THIS ACT I WAS PLACED BACK IN HARM'S WAY VIA EXTREME HEAT AND DELIBERATE INDIFFERENCE IN SEVERAL DEMEANING AND HARMFUL WAYS, SEE ABOVE, See also <u>FARMER V. BRENNAN</u> 114 S. Ct. 1970. DEFENDANTS ARE QUITE AWARE OF MY OBESITY (BMI of 31.0 PER UTMB 3/2018), AS
EXHIBIT 9 PP. 39
WELL AS MY CHRONIC THYROID DISEASE CONDITION, BOTH CERTIFIED AS
EXHIBIT 10 PP. 43-44
"HEAT SENSITIVE SUBCLASS" BY THE HONORABLE JUDGE KEITH P. ELLISON UNDER FED. R. CIV. PROC. 23(a), AND RULE 23 (b)(2) IN <u>YATES, COLE, BRANUM</u> <u>KING, WALLACE, AND SANTEE</u> V. <u>COLLIER</u> 868-F. 3d. 354 (2017 U.S. APP. LEXIS) 15847, YET, IN A BLATANT DISREGARD FOR A FEDERAL JUDGE'S DECISION TO HOUSE ME IN 88° LIVING CONDITIONS, DEFENDANTS ACTED DELIBERATELY INDIFFERENT TO THE ABOVE BY PLACING ME BACK IN THE HEAT AND HARM'S WAY, AS LISTED ABOVE, See <u>HINOJOSA V. LIVINGSTON</u> <u>807 f.3d. 657, 669</u> (5TH CIR. 2015) ("THE 8TH AMEND. GUARANTEES INMATES A RIGHT TO BE FREE FROM EXPOSURE TO EXTREMELY DANGEROUS TEMPERATURES WITHOUT ADEQUATE REMEDIAL MEASURES."), See <u>BALL V. LEBLANC</u> 792 f. 3d. 584 (5th cir. 2015)

17.

("THAT HEAT IN PRISON HOUSING AREAS POSED A SUBSTANTIAL RISK OF SERIOUS HARM TO INMATES WHERE THE HEAT INDEX RANGED FROM 81.5° FAHRENHEIT TO 107.79° F. AND SURPASSED 100° F ON FIVE OR MORE DAYS DURING A ROUGHLY TWO WEEK PERIOD") SEE ALSO, BLACKMON V. GARZA 484 F. App'x 866 (5TH CIR. 2012) ("THOUGH RECOGNIZING THAT TDCJ HAD TAKEN SOME REMEDIAL STEPS, SUCH AS PROVIDING COOLICE WATER 3 TIMES PER DAY AND ALLOWING EXTRA SHOWERS, WE CONCLUDED THIS WAS INSUFFICIENT TO JUSTIFY JUDGMENT IN TDCJ'S FAVOR" - RELYING PARTLY ON THE FACT THAT THERE WAS "NO AIR-CONDITIONING," "THE WINDOWS WERE SEALED," THE UNIT "DID NOT HAVE A WATER FOUNTAIN," ...), SEE ALSO VALIGURA V. MENDOZA (868 F. 3d. 361) 265 F. APPx. 232, 233-34, (5TH CIR. 2008) (DECIDING APPEAL INVOLVING A PRISONER WHO "ALLEGED THAT TEMPERATURES IN THE BUNK AREA REACHED INTO THE 90°'S AND 100°'S DUE TO POOR VENTILATION" AND THAT "HE WAS NOT ABLE TO USE THE RESTROOM OR SHOWERS WITHOUT LENGTHY WAITS, WHICH CAUSED HIM SEVERE DISCOMFORT.")

IN SHORT, THE FEDERAL COURTS AND COURT OF APPEALS HAVE REPEATEDLY RECOGNIZED THE SERIOUS RISK OF HARM THAT EXCESSIVE HEAT CAN POSE IN THE PRISON CONTEXT ABSENT ADEQUATE MITIGATING MEASURES, AND HAVE CONSISTENTLY FOUND EVIDENCE IN SUPPORT OF EIGHTH AMENDMENT VIOLATIONS, "EVEN WHEN CERTAIN MITIGATING MEASURES WERE AVAILABLE."

IN LIGHT OF THE ABOVE, THE DEFENDANTS NAMED IN THIS CIVIL COMPLAINT ARE AND HAVE VIOLATED MY CIVIL RIGHTS AS PURSUANT TO THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND, IN DEFIANCE AND DELIBERATE INDIFFERENCE HAVE PLACED ME BACK IN THE UNCONSTITUTIONAL LIVING CONDITIONS OF "EXTREME HEAT," "LACK OF HEAT MITIGATION" - "GOOD FAITH - EFFORTS" AND CRUEL AND UNUSUAL PUNISHMENT, FULLY KNOWING OF MY CHRONIC THYROID DISEASE, AND OBESITY, MEDICAL CONDITIONS IN WHICH THE HONORABLE JUDGE KEITH P. ELLISON CERTIFIED, (AND THE 5TH CIRCUIT AFFIRMED), AS "HEAT - SENSITIVE SUB-CLASS, WHICH, IN TURN, PLACED ME UNDER THE HONORABLE JUDE'S INJUNCTIVE ORDER TO HOUSE ME IN 88° LIVING CONDITIONS, THE SAME INJUNCTION WHICH WAS EXTENDED TO LAST THROUGH THE SUMMER OF 2018, (ENDING OCT. 15, 2018), IN SPITE OF THE ABOVE THE DEFENDANTS "TURNED THEIR BACKS ON ME" AND FOR THAT ALONE JUSTIFIES MY REQUEST AT COMPENSATION AS WELL AS INJUNCTIVE (REAFFIRMED) RELIEF.

## ARGUMENT: [B]. THE DELIBERATE INDIFFERENCE HERE AT THE

ESTELLE UNIT HAS CAUSED AT LEAST TWO DEATHS IN THE LAST 2-3 MONTHS, FROM JULY 2018 - SEPTEMBER 2018 - THIS DELIBERATE INDIFFERENCE IS THE RESULT OF MALICIOUS AND SADISTIC "USE OF FORCE" ON TWO INMATES BY "ROGUE PRISON GAURDS" WHO MAY WELL BE UNDER INVESTIGATION FOR THE DEATHS AT THE TIME OF THIS WRITING (SEPT. 16th 2018). THE TWO INMATES WHO WERE KILLED VIA THE WANTON RECKLESSNESS OF THE TDCJ-CID STAFF ARE: GARY COX, TDC# 574666, WHOM SUPPOSEDLY DIED FROM A BRAIN ANEURYSM OR HEMORAGE OF SOME SORT, IT IS SAID THAT TDC STAFF "TIPPED HIM OVER" VIA AN UNSECURED POSITION OF HIS BODY, WHILE TDC STAFF WERE TRANSPORT-ING HIM VIA STAIRS AND HE SLID-OFF AND HIT HIS HEAD. AN INVESTIGATION LEADING UP TO THIS EVENT (GOING BACK 6 MOS.-TO 1 YR.) SHOULD BE SUFFICIENT TO SHOW MITIGATING EVENTS IN THE LIFE OF MR. COX THAT WILL PROBABLY BE DISTURBING AND DAMNING, OF THE TDC DELIBERATE INDIFFERENCE INHERENT IN THE PRISON OFFICIALS HERE AT THE ESTELLE UNIT. THIS INCI-DENT TOOK PLACE SOMEWHERE AROUND JULY - TO - AUGUST 26, 2018. SEE WILSON V. SEITER 501 U.S. 294, 115 L.ED. 2d. 271, 111 S.Ct. 2321, ("EXTENDING DELIBERATE INDIFFERENCE TO ALL CONDITIONS OF CONFINEMENT, INCLUDING MEDICAL AREAS."), SEE ALSO WHITLEY V. ALBERS 475 U.S. 312, 319, 89 L.Ed. 2d. 251, 106. S.Ct. 1078, RHODES V. CHAPMAN 452 U.S. 337, 69 L. ED. 2d. 59, 101 S.Ct. 2392 * "THE DELIBERATE INDIFFERENCE" STANDARD APPLIED IN ESTELLE V. GAMBLE 429, U.S. 97, 106, 50 L.ED. 2d. 251, 97 S.Ct. 285, TO CLAIMS INVOLVING MEDICAL CARE APPLIES GENERALLY TO PRISONER CHALLENGES TO CONDITIONS OF CONFINEMENT." THAT THE TDCJ STAFF HERE ARE NOT ADEQUATELY TRAINED IS A CONTRIBUTING FACTOR IN THIS MAN'S DEATH. IT FURTHER GOES THAT LACK OF THE SUPERVISORY STAFF HERE AT THE ESTELLE UNIT, FROM WARDEN VAUGHN AND ON DOWN THE CHAIN, HAVE ACTED IN OBDURACY AND WANTONNESS CONDUCT IN DELIBERATE INDIFFERENCE TO MY, AND MR. COX'S HEALTH VIA NOT TRAINING, AND NOT MONITORING, TRAINING, AND IMPLEMEN-TATIONS OF PROFESSIONALISM AMONG THEIR STAFF TO ENSURE

THAT MY LIVING CONDITIONS MEET THE CONSTITUTIONAL BASELINE AFFORDED ME BY THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION. PART OF THIS BEHAVIOR COULD ORIGINATE FROM THE FACT OF:

(A) SEVERE PRISON UNDERSTAFFING, AND

(B) A "GOOD OLE BOY" AGENCY CULTURE, FAVORITISM, SUBPAR PAY, AND NO AIR-CONDITIONING.

HERE ARE SOME QUOTES CITED IN BOTH THE DALLAS MORNING NEWS, AND THE HOUSTON CHRONICLE:

- EXTENSIVE OFFICER VACANCIES - 14 PERCENT OFFICER VACANCY RATE, FROM MAY 31ST 2018 SHOW THAT 14 UNITS WERE UNDER 75% UNDERSTAFFED, FERGUSON UNIT 2017 A FEMALE TEACHER ALLEGEDLY RAPED DUE TO UNDERSTAFFING. PRISONS CAN BECOME MORE DANGEROUS... MAKING IT HARDER TO MEET REHABILITATIVE GOALS; AND

- "WE ALREADY PAY LESS TO INCARCERATE PEOPLE THAN JUST ABOUT EVERY OTHER STATE," SCOTT HENSON POLICY DIRECTOR WITH JUST LIBERTY A NON-PROFIT CRIMINAL ADVOCACY GROUP.

- A 2015 VERA INSTITUTE OF JUSTICE ANALYSIS SHOWED THAT TEXAS HAS 11.6 PERCENT OF THE COUNTRY'S PRISONERS (STATE), BUT ONLY ACCOUNTS FOR 7.6 PERCENT OF PRISON SPENDING.

THE ABOVE WAS CITED IN THE DALLAS MORNING NEWS APPX. AUG-SEPT. 2018 AS REPORTED BY KERI BLAKINGER OF THE HOUSTON CHRONICLE.

MORE QUOTES FROM THE AUGUST 25, 2018 DALLAS MORNING NEWS:

- R. TERRELL McCOMBS - TEXAS PRISON BOARD VICE CHAIRMAN - "WHEN IT COMES TO FACILITIES, WE'RE REALLY IN A DEEP DITCH." "...WE'RE JUST PUTTING THEM OFF AND USING CHEWING GUM AND BALING WIRE TO KIND OF KEEP THEM GOING." "IT COMES A POINT WHERE THIS WILL MOST DEF- INITELY AFFECT PUBLIC SAFETY."

- SINCE JULY 21, 2018 HEATWAVE KICKED OFF 19 INMATES AND STAFF HAVE BEEN TREATED FOR HEAT ILLNESS.

THIS LAST STATEMENT IS ONLY TRUE IF TDC HAS DIAGNOSED AND REPORTED

ALL THE PROPER HEAT RELATED EPISODES? PLEASE RECALL PRISONER KNOX OWN ALLEGATION THAT WARDEN ON ESTELLE UNIT ORDERED MEDICAL STAFF TO QUIT NAMING INCOMING MEDICAL EMERGENCES AS HEAT-RELATED. SEE EXHIBIT 4(A) (MR. KNOXS' HANDWRITTEN NOTES) PP. 30½

FROM THE QUOTES OF R. TERREL McCOMBS - SCOTT HENSON — THE INVESTIGATIVE REPORTING OF THE DALLAS MORNING NEWS, AND THE HOUSTON CHRONICLE - TO THE ACTIONS OF THE DEF-ENDANTS NAMED HEREIN, THERE IS INHERENT OBDURACY AND WANTONNESS IN THEIR ACTIONS THAT EQUATE TO DELIBERATE INDIFFERENCE.

FOR THE DEATH OF GARY COX I ASK FOR 1 MILLION DOLLARS TO BE DONATED TO THE "JUST LIBERTY" PRISONER'S ADVOCACY GROUP HEADED BY SCOTT HENSON, AS WELL AS ANY INJUNCTIVE RELIEF CONSISTENT WITH INJUNCTION NAMED ABOVE.

## ARGUMENT: C.

APPX. 2 WKS. AGO, SEPTEMBER 1ST, 2018, HERE AT THE ESTELLE UNIT, AND IN FRONT OF THE SOUTH DINING HALL (MAIN SOUTH HALL), INMATE Lloyd G. HARGRAVES # 1833602 WITNESSED CORRECTIONAL OFFICER EXHIBIT 8b. (C.O.) GREGORY (MR. GREGORY), BEAT AN INMATE (John Doe), WHOM I THINK IS NAMED DAVE, OR DAVID RICE, A HOMELESS MAN FROM DALLAS, TEXAS WHOM IS A PSYCH. PATIENT, WHO IS MENTALLY (WAS) MENTALLY HANDICAPPED, THIS C.O. GREGORY WAS WITNESSED (AND POSSIBLY CAUGHT ON CAMERA), VIOLENTLY BEATING THIS MENTALLY ILL PRISONER. THE PRISONER LATER DIED IN A-WING (LOCK-UP) ESTELLE UNIT. A LT. Goodall IS SUPPOSEDLY INVOLVED IN THIS TOO, WHOM WAS JUST RECENT-LY TRANSFERRED TO ANOTHER PART OF THE PRISON. THIS IS MALICIOUS AND SADISTIC CRUEL AND UNUSUAL PUNISHMENT BY TRUSTED PRISON STAFF RESULTING IN THE NEGLEGENT MURDER OF A MENTALLY ILL HOMELESS MAN FROM Dallas, SEE FARMER V. BRENNAN 114 S.Ct. 1970 (PRISON OFFICIALS SUBJECTIVE AWARENESS OF RISK OF HARM SUFFICIENT FOR OFFICIALS TO BE LIABLE UNDER THE EIGHTH AMENDMENT"), (" AMOUNTING TO DELIBERATE INDIFFERENCE UNDER THE CRUEL AND UNUSUAL PUNISHMENTS CLAUSE)

THE "STATE OF MIND" OF C.O. GREGORY AND LT. GOODALL IS APPARENT FROM THE EYEWITNESSES, CAMERAS, AND THE OTHER INMATES WHO WERE HOUSED IN THE A-WING LOCK-UP AT THE TIME OF John Doe's DEATH. *NOTE* TDCJ OFFICIALS HERE AT THE ESTELLE UNIT HAD A MASS EXODUS OF PRISONERS WHO WERE HOUSED ON A-WING APPX. 9-13-2018 AT APPX. 5:00 P.M, AS I WITNESSED THEM ALL WALK BY IN HAND CUFFS AS THEY PASSED THE LAW LIBRARY IN WHICH I WAS ATTENDING. THIS COULD BE A MALICIOUS ATTEMPT TO "SCATTER" THE WITNESSES (REMINISCENT OF THE "RUIZ" ERA ACTIONS BY THE TDCJ) (ALTHOUGH THIS ALLEGATION CANNOT BE CONFIRMED). *END NOTE*

UNDER THE SURVIVORSHIP CLAUSE I WISH TO REPRESENT JOHN DOE'S DEATH IN THIS CIVIL ACTION AS WE ARE BOTH HOMELESS MEN FROM DALLAS. ("HAVING STRIPPED PRISONERS OF VIRTUALLY EVERY MEANS OF SELF-PROTECTION AND FORECLOSED THEIR ACCESS TO OUTSIDE AID, THE GOVERNMENT AND IT'S OFFICIALS AND ARE NOT FREE TO LET THE STATE OF NATURE TAKE ITS COURSE".) CF. DESHANEY, SUPRA AT 99-200, 109 S. Ct. 998, ESTELLE SUPRA, AT 103-104, 97 S. Ct. 285, "AND DOESN'T SQUARE WITH EVOLVING STANDARDS OF DECENCY." ESTELLE SUPRA AT 102. MAY THE PAST YEAR'S RECORD (MEDICAL-MENTAL) OF John Doe ATTEST TO HIS MENTAL IMPAIRMENTS AND PROVE THE TDC STAFFS AWARENESS OF SUCH. "IN ITS PROHIBITION OF "CRUEL AND UNUSUAL" PUNISHMENTS, THE EIGHTH AMENDMENT PLACES RESTRAINTS ON PRISON OFFICIALS WHO MAY NOT, FOR EXAMPLE, USE EXCESSIVE PHYSICAL FORCE AGAINST PRISONERS," SEE Hudson v. McMILLIAN 503 U.S. 1, 117 L.ED. 2d, 156, 112 S. Ct. 995, (1992), see also Hudson v. Palmer 468 U.S. 517, 526-27, 82 L.ED. 2d. 393, 104 S. Ct. 3194 (1984), HELLING 509 U.S. AT 31, 32, 113 S. Ct. 2475, WASHINGTON v. HARPER 494 U.S. 210, 225, 108 L. ED. 2d, 178, 110 S. Ct. 1028 (1990), ESTELLE 429 U.S. AT 103, 50 L.ED. 2d. 251, 97 S. Ct. 285, CF. DESHANEY v. WINNEBAGO COUNTY DEPT. SOCIAL SERVICES 489 U.S. 189, 198-99, 103 L.ED. 2d. 249, 109 S. Ct. 998 (1989).

IN BOTH DEATHS: MR. COX AND John Doe, A FAILURE TO TRAIN THE OFFICERS COULD BE CONSTRUED AS DELIBERATE INDIFFERENCE, CANTON V. HARRIS 489 U.S. 378, 103 L.ED. 2d. 412, 109 S. Ct. 1197 (1989) (INTER, REV.

STAT. §1979, 42 U.S.C. §1983. Subjectively, C.O. Gregory's attitude Toward Mr. John Doe was malicious and sadistic. (It is said that Captain Magallanes just took early retirement - possibly from pressure from Mr. C.O. Gregory and another prison staff by asking Captain Magallens to corroborate their statements on John Doe's Death). Objectively, from witness accounts, (see affidavits as Exhibit's 8(A-c)), it can be deemed the same as above. This is cruel and unusual punishment. This is murder and a violation of the eighth and fourteenth amendments of the United States Constitution. If not murder - severe abuse. ✳

Carson v. Green 446 U.S. 14, 64 L.Ed. 2d. 15, 100 S.Ct. 1468, ("Federal common-law allows survival of a "Bivens" type action whenever a state survivorship statute would abate the action, provided the action was brought against defendants whose conduct resulted in death.") 581 f. 2d. 669. With that citing I hold any (unnamed) TDCJ-staff member accountable for Mr. John Doe's Death. Since 28 U.S.C. §1331(A), and 42 U.S.C. §1983 compliment one another, I cite these in reference to the above and ask for one million in damages, for Mr. John Doe's Death, to be awarded to all Dallas homeless shelters equally in his name so that his death is not forgotten.

## CONCLUSION : Petitioner asks this court to allow this action to move in tandem with several wrongful death and injury lawsuits where inmates and other TDCJ prisoners suffered and died of heatstroke, See McCollum v. Livingston No. 4:14-cv-03253; Adams v. Livingston No. 4:14-cv-03311; Webb v. Livingston No. 4:14-cv-3302; Togonidze v. Livingston No. 4:13-cv-3324; Martone v. Livingston No. 4:13-cv-3369; Hinojosa v. Livingston No. 4:14-cv-03311; Caddell v. Livingston No. 4:14-cv-3323. - All cited in Cole v. Collier No. 4:14-cv-1698. (As these cases sought to combine and consolidate in a multi-district litigation panel, which was denied.) Se in re: Texas Prison Conditions of Confinement Litigation, 52 F.Supp. 3d. 1379 (J.P.M.L. 2016), Petitioner suggests it will only take one case to legitimize this cause.

TDCJ has already admitted to this court that "heat-sensitive subclass were even more vulnerable to heat," see Cole v. Collier No. 4:14-cv-1698 (Doc. 989 March 06, 2018), and that "... this subclass could no longer

23

BE HOUSED IN LOCATIONS WHERE THE INDOOR HEAT EXCEEDED 88°." see Cole V. COLLIER No. 4:14-CV-1698 (Doc. 737, pp. 98-99), ADDING "OTHER MEMBERS, WHO DUE TO THEIR GOOD HEALTH WERE AT LESS RISK, (THOUGH STILL SUBSTANTIAL), RECIEVED IMPROVED ACCESS TO "RESPITE" AREAS (AIR-CONDITIONED PORTIONS OF PRISONS); THIS IS NOT EVEN DONE FOR US HERE AT THE ESTELLE UNIT, WHERE THIS IS CATEGORIZED AS A "MEDICAL UNIT," AND IN HUGE PAINTED LETTERS IN THE MAIN HALLWAY THERE'S A MOTTO TO THE EFFECT "CREATING EXCELLENCE" OR SOME OTHER MISLEADING STATEMENT IN LIGHT OF THE DEATHS, ASSAULTS, DENIAL TO ACCESS OF RESPITE, NO-TO-POOR VENTILATION, NO ACCESS TO COOL WATER OR COOL SHOWERS, A WARDEN WHO THREATENS TO "WHOOP" INMATES, A WARDEN WHO FIGHTS WITH INMATES, A UNIT WHERE GRIEVANCES ARE SOMETIMES ILLEGALLY THROWN AWAY - OR NOT IN-VESTIGATED PROPERLY, LONG AND OVERCROWDED WAITS IN SEVERELY DANGEROUS HOT TEMPERATURES (SOMETIMES UNSUPERVISED BY PRISON STAFF) IN AREAS SUCH AS: THE DINING HALL, SHOWER, AND DAY-ROOMS, AND WHERE SOMETIMES THE ICE FOR THE DAY ROOM COOLERS ARE NOT FILLED FOR 2 hrs. SOMETIMES WHILE PRISON OFFICIALS GET SERVICED EVERY 30 min - to -1 hr., AND LASTLY WHERE NO ONE SERVES COOL WATER TO THOSE LOCKED IN CELLS FOR HOURS AT A TIME.

YET, IN COLE V. COLLIER, EVEN THE HEALTHY PRISONERS GOT UPGRADED TREATMENT (TREATMENT OF STANDARD HUMANE DECENCY) THAT TDCJ WAS FORCED TO DO BY THE COURT, IN LIGHT OF THE EIGHTH AND FOURTEENTH AMEND-MENT VIOLATIONS HERE AT THE ESTELLE UNIT OF CRUEL AND UNUSUAL PUN-ISHMENT - FOR ALL OF THE ABOVE - IN WHICH DELIBERATE INDIFFERENCE APPLIES TO ALL CONDITIONS OF CONFINEMENT, INCLUDING THE EXTREME TEMP-ERATURES, LACK OF GOOD FAITH HEAT MITIGATION, LACK OF TRAINING, MALICIOUS AND SADISTIC BOSSES, ETC - - - - INCLUDING THE DEATHS OF THE ABOVE INMATES, THE EXPOSURE TO PHYSICAL HARM THAT I AM FACED WITH, DUE TO MY MEDICAL CONDITIONS, IN WHICH TDCJ DEFENDANTS ARE AWARE OF YET PLACED ME BACK IN THESE CONDITIONS, AND THE OTHER PLAINTIFF'S SUCH AS MR. KNOX, MR. COX, AND MR. John Doe, FOR ALL OF THE ABOVE I CITE THE FOLLOWING : " CLAIMS BROUGHT UNDER SECT. 1331(a) AND BIVENS ARE THE FEDERAL COUNTERPART TO SECT. 1983 CIVIL RIGHTS COMPLAINTS, AS SUCH UNDER COLLATERAL ISSUES DEVELOPED UNDER SECT. 1983 SHOULD APPLY TO THESE CLAIMS BY ANALOGY." PATON V. LaPRADE 524 F.2d, 862, 871, (3RD CIR. 1975), RENDE V. RIZZO 418 F.Id. Supp. 96, 98 (E.D. PA. 1976). AND AS FOR PERSONEL INVOLV-MENT BY THE VARIOUS TDCJ STAFF (AS EXHIBITS WILL DEMONSTRATE), I CITE DYSON V. KOCIK 564 F. SUPP. AT 120, " CONDUCT OF SUPERINTENDENT OF CORRECTIONAL INST-ITUTION IN REVIEWING MISCONDUCT PROCEEDINGS IN WHICH PRISONER'S DUE PROCESS RIGHTS WERE ALLEGEDLY VIOLATED WAS SUFFICIENT TO SATISFY PERSONEL INVOLVMENT REQUIRE-MENT FOR CIVIL RIGHTS ACTION."

AND FURTHERMORE: "DURING THE SUMMER MONTHS, INDOOR TEMPERATURES REACH 100°F AND CONSISTENTLY EXCEED 98°F, (SEE MR. KNOX ARGUMENT HEREIN), TDCJ IS AWARE OF THESE HIGH TEMPERATURES. TDCJ HAS ACKNOWLEDGED THAT THESE HIGH TEMPERATURES ARE A POTENTIAL RISK TO THE HEALTH AND SAFETY OF THE INMATES, AND IN "EFFORTS" (SUPPOSEDLY) TO TRY AND REDUCE THESE HIGH TEMPERATURES TDCJ "CLAIM" THEY PROVIDE CERTAIN "HEAT-MITIGATION" MEASURES INCLUDING: MORE FREQUENT SHOWERS, COLD DRINKING WATER, FANS, TEMPORARY ACCESS TO AIR-CONDITIONED "RESPITE" AREAS. SINCE 1998, TWENTY (20) OR MORE INMATES HAVE DIED AS A RESULT OF EXCESSIVE HEAT IN TDCJ. THIS HISTORY LEAD THE COURT TO CONCLUDE THAT "AS A FACTUAL MATTER," THERE WAS A "SIGNIFICANT HISTORY OF SERIOUS HEAT RELATED ILLNESSES," IN TDCJ AND WITHIN THE PACK UNIT. ONLY IN 2015 AFTER Cole V. Collier WAS FILED, DID TDCJ BEGAN "RESPITE." AND I STATE THAT NOTHING SHORT OF ANOTHER COURT ORDER WILL CHANGE THE CONDITIONS WE FACE HERE AT THE ESTELLE UNIT. *NOTE* 2018 IS LISTED AS THE HOTTEST SUMMER ON NATIONAL RECORD.

## PRAYER

I, JAMES ARTHUR MEEKS III, #543366, PETITIONER Pro Se, FILE THIS COMPLAINT ON BEHALF OF ALL OF THE ABOVE AND PRAY'S THIS COURT FURTHER THIS CAUSE.

## UNSWORN DECLERATION

I, JAMES ARTHUR MEEKS III #543366 SWEAR UNDER THE PENALTY OF PERJURY, DO HEREBY SWEAR ALL OF THE ABOVE TO BE TRUE AND CORRECT TO THE BEST OF MY EXPERIENCE(S) AND KNOWLEDGE AND AS BEST AS THE VERY LIMITED INVESTIGATIVE AVENUES AVAILABLE TO ME. SIGNED THIS THE 14TH DAY OF SEPTEMBER 2018.

JAMES ARTHUR MEEKS III

_James A. Meeks III_

## CERTIFICATE OF SERVICE

I, JAMES ARTHUR MEEKS III, DO HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PLACED IN THE ESTELLE UNIT PRISON MAILING SYSTEM, FIRST-CLASS POSTAGE, PRE-PAID ON THE 17th DAY OF September 2018, AND MAILED TO THE FOLLOWING: UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION CLERK OF COURT P.O. BOX 61010 HOUSTON, TEXAS 77208.

SINCERELY SUBMITTED,

JAMES ARTHUR MEEKS III
#543366
(PETITIONER PRO SE)
ESTELLE UNIT 264 fm 3478
HUNTSVILLE, TEXAS 77320

James A. Meeks III

United States Courts
Southern District of Texas
FILED

SEP 24 2018

David J. Bradley, Clerk of Court

United States District Court
Southern District of Texas
Houston Division (Clerk)
P.O. Box 61010
Houston, TX 77208

Weeks James #543364
Estelle Unit
264 FM 3478
Huntsville, TX 77320